IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**HARRY DELGADO,**

    Petitioner,

v.                                                         Civil Action No. **3:11CV165**

**E.D. WILSON,**

    Respondent.

## MEMORANDUM OPINION

Harry Delgado, a federal inmate who is currently incarcerated in the Federal Correctional Institute in Petersburg, Virginia, submitted this petition for a writ of habeas corpus under 28 U.S.C. § 2241. Delgado contends that he did not receive due process in conjunction with his institutional conviction. Specifically, Delgado asserts there was insufficient evidence to support that conviction for possession of a hazardous tool simply because a cell phone and MP3 player were found in his cubicle. Respondent has moved to dismiss. Delgado has responded. The matter is ripe for disposition.

### I. Factual and Procedural History

In January of 2010, Delgado was incarcerated at the Federal Prison Camp in Lewisburg, Pennsylvania. On January 12, 2010, Bureau of Prison ("BOP") staff wrote two incident reports, which charged Delgado with possession of contraband. (§ 2241 Pet. Ex. A, B.) The contraband included six bottles of sauces, two bags of muscletech protein powder, a cell phone and an MP3 player. (*Id.*) The items were found in Delgado's cubicle in his prison dormitory. On February 3, 2010, the two incident reports were rewritten into a single incident report, which charged Delgado with "[p]ossession of a hazardous tool, electronic device" and "[p]ossession of anything unauthorized." (*Id.* Ex. C 1.)

At a disciplinary hearing conducted on February 8, 2010, Delgado admitted to possessing the items found in his prison locker—the protein powder and sauces—but denied knowledge of the cell phone and MP3 player. (§ 2241 Pet. 6.) During a subsequent disciplinary hearing, Delgado was found guilty of the more serious charge of possession of a hazardous tool. (§ 2241 Pet. Ex. D.) The Disciplinary Hearing Officer ("DHO") relied, in part, upon Correctional Officer J. Malakoski's incident report to support this conviction. (§ 2241 Pet. Ex. D 2.) The DHO summarized Correctional Officer J. Malakoski's account of the incident as follows:

> On 1/12/10, at or about 6:00 PM, while conducting a search of cube K03-064, I discovered numerous items of contraband to include; a cell phone watch, six bags of protein powder, four Met-Rx protein power bars, four Nike tennis shoes, (3 of the shoes were new, size 10, one pair size 12.5), one MP3 player, one USB cable, one charging device and six bottles of assorted food spices not available at this institution. All items were confiscated. Inmates DELGADO, H. # 14291-067 and Mitchell, Adrian #04704-061 were the inmates assigned to this cubical. The contraband was found through out the cubical.

(*Id.*) The DHO then recounted the remaining evidence, and the basis for his finding of guilt:

> Upon questioning by the DHO, DELGADO denied the charges. He elaborated upon his plea by stating, "None of that was mine. I'm telling you the truth. I already got found guilty of the powder and spices."
> Despite DELGADO's claim of no wrong doing in this case, the DHO believed he was responsible for the electronic items as cited by Officer Malakowski [sic] in relation to the search of DELGADO's cube. Federal Bureau of Prisons policy stipulates inmates are compelled to keep their assigned areas free of contraband. In this case, contraband (cell phone watch, MP-3 player, USB cable and charging devices (were discovered within DELGADO's living cube, K03064). The DHO did not believe the aforementioned electronics were provided through legitimate institution channels. Further, items of this type are not unauthorized [sic] for inmate retention. Noted, in the related case on Mitchell # 04705-061 (DELGADO's cell mate) Mitchell claimed no knowledge or ownership of the electronic items. All considered, the DHO believed DELGADO jointly responsible for the same. The DHO amended the Possession of a Hazardous Tool infraction, as electronics of this type (specifically the cell phone watch) was believed loosely construed as a tool. However, these items are believed disruptive to the orderly running and security of a correctional facility. In regard to the 100 Series nature of this incident, a cell phone can be used to

> facilitate escape, contraband introductions and potential harm to the community through unfettered access to the public through an unmonitored communications contact. . . .
>
> After the consideration of evidence listed [above], the DHO has drawn the conclusion the greater weight of the evidence ... supports the finding DELGADO, Harry, Register No. 14291-067, committed the prohibited act of Conduct Which Disrupts and Interferes With the Security or Running of a BOP Facility ... Possession, Manufacture or Introduction of a Hazardous Tool, Code 199(108), on 1/12/10, at or about 6:00 PM, K03-064, USP Lewisburg, PA.

(*Id.* at 3.) The DHO sanctioned Delgado with the imposition of 60 days of disciplinary segregation, a transfer, forfeiture of 40 days of good conduct time, and the loss of some privileges. (*Id.* at 3; § 2241 Pet. 1.)

## II. Analysis

When an inmate brings a habeas petition to challenge the sufficiency of the evidence underlying a revocation of his good time credits, the requirements of due process are met when "the findings of the prison disciplinary board are supported by some evidence in the record." *Superintendent Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985).[1] Respondent asserts that there is some evidence to support Delgado's conviction for possession of a hazardous tool under the

---

[1] The Constitution guarantees the following additional procedural protections prior to revoking vested good time credits:

> (1) an impartial tribunal; (2) written notice of the charges prior to the hearing; (3) an opportunity to call witnesses and present documentary evidence; (4) aid from a fellow inmate or staff representative if the issues are complex; and, (5) a written statement by the fact finder describing the evidence relied upon and the reasons for taking disciplinary action.

*Coor v. Stansberry*, No. 3:08CV61, 2008 WL 8289490, at *2 (E.D. Va. Dec. 31, 2008) (*citing Wolff v. McDonnell*, 418 U.S. 539, 563–71 (1974)). In his § 2241 Petition, Delgado has not claimed entitlement to relief based on the denial of one of the above procedural protections.

doctrine of constructive possession. (Mot. Dismiss 5–7.)[2] The United States Court of Appeals for the Fourth Circuit, however, has circumscribed the use of the doctrine of constructive possession to support a finding of guilt in the context of prison disciplinary proceedings. *See McClung v. Shearin*, 90 F. App'x 444, 446 (4th Cir. 2004) ("*McClung I*"), *appeal after remand*, *McClung v. Hollingworth*, No. 06-6699, 2007 WL 1225946 (4th Cir. Apr. 26, 2007) ("*McClung II*").

In *McClung I*, prison officials found McClung guilty of possession of a dangerous weapon. *McClung I*, 90 F. App'x at 445. "The Hearing Officer relied on the following as evidence of McClung's guilt: (1) the fact that a sharpened instrument was found in McClung's living area and (2) the prison's rule of 'constructive possession' which states that '[w]hen positive ownership can not be determined, all occupants of the cell are equally responsible.'" *Id.* at 446 (alteration in original). McClung asserted the doctrine of constructive possession should not apply because "his cell was unlocked and, therefore, accessible by other inmates." *Id.* The Fourth Circuit concluded that, if "McClung's cell was accessible by 130 inmates [(as McClung claimed)], we find that there was insufficient evidence to connect him to the weapon." *Id.* The Fourth Circuit explained, "Constructive possession provides 'some evidence' of guilt only when relatively few inmates have access to the area." *Id.* (*citing Broussard v. Johnson*, 253 F.3d 874, 877 (5th Cir. 2001); *Hamilton v. O'Leary*, 976 F.2d 341, 345–46 (7th Cir. 1992)). The Fourth Circuit remanded the matter to the district court for further proceedings. *Id.*

On remand, the district court conducted an evidentiary hearing and dismissed McClung's claim. *McClung II*, 2007 WL 1225946, at *2. "[A]t the evidentiary hearing, both sides presented

---

[2] Because the Motion to Dismiss is not numbered, the Court utilizes the page numbers assigned to this document by the Court's CM/ECF system.

4

extensive evidence to the district court on the issue of the accessibility of McClung's cell to non-occupants." *Id.* The Fourth Circuit observed,

> [T]he evidence as a whole tended to show that gaining access to the interior of McClung's cell, and the area beneath the cell's desk, would have been difficult for another inmate. McClung's cell was located in a particularly public area of the unit, and the weapon was located in a particularly inaccessible area within that cell. Furthermore, McClung provided no evidence that showed that any other inmate had actually gained access to his cell or that he had requested that his cell be locked because he feared such occurrence. Given this record, we certainly cannot say that the factual finding of the district court—that McClung's cell was the "exclusive domain" of its occupants—was clearly erroneous.

*Id.* at *3 (*citing United States v. Hill*, 473 F.3d 112, 115 (4th Cir. 2007)). The Fourth Circuit concluded that, "since a dangerous weapon was discovered in a cell that was the 'exclusive domain' of McClung and his cellmate, the constructive possession rule provides the necessary 'some evidence' sufficient to sustain McClung's disciplinary conviction." *Id.*

Contrary to Respondent's suggestion, at this juncture, the record is insufficient for the doctrine of constructive possession to provide the necessary "some evidence" for Delgado's institutional conviction.[3] *See McClung I*, 90 F. App'x at 446. Delgado swears that at the time of the offense,

> I was assigned to a housing unit holding approximately 150 inmates. The housing unit was an open dormitory layout, with the beds sep[a]rated into numerous cubicles. Each cubicle consisted of six foot divider walls sep[a]rating the beds, but no wall or door existed in the front of the cubicle. Each cubicle contained bunk beds and a locker for each assigned inmate, which could be locked with combination locks purchased by the inmates to prevent access to personal belongings by other inmates.

---

[3] Respondent insists, "The facts of this case akin to those in *McClung II*—although other inmates theoretically could access Petitioner's living area, that living area was the exclusive domain only of Petitioner and his cellmate. As such Petitioner is responsible for the contraband found there." (Resp't's Reply 4.) Respondent is mistaken. *McClung II* was decided after the district court conducted an evidentiary hearing. Unlike *McClung II*, Respondent has not demonstrated that Delgado's living area was the exclusive domain of Delgado and his cellmate.

5

> Each cubicle in the housing unit was equally accessible to the 150 inmates assigned to the unit. Apart from periodic counts conducted by the guards, there was no time of day when inmates were required to remain within their own cubicles. 24 hours a day, inmates were allowed to move back and forth between cubicles, bathrooms, TV rooms and other shared areas of the unit. There was no rule prohibiting inmates from entering cubicles assigned to other inmates. The BOP guards did not have any office or desk in the unit where they remained continuously to monitor activity in the unit. The guards were stationed in a different building, and would come and walk through the housing unit once an hour, then leave. There were no camera's [sic] in the unit to monitor and record on film inmate movement and activity inside the unit. The unit was unsupervised by guards about 90% of any given day. Any inmate walking by a cubicle could place an item of contraband in the open public area of the cubicle without being detected. Any inmate could drop or throw contraband into the adjoining cubicles from inside his own cubicle by reaching over the six foot dividers sep[a]rating the cubicles. There is no way any inmate can prevent other inmates from hiding or placing contraband in the open area of his cubicle while he is away from the housing unit for work, meals, recreation or other programs. I have personally seen inmates toss contraband items into the trash cans of other inmates cubicles when guards entered the unit to perform routine searches of cubicles. I have also witnessed inmates hide contraband under or behind lockers or desks in cubicles assigned to other inmates.

(§ 2241 Pet. 4–5 (paragraph number omitted).)[4] As noted previously, "[c]onstructive possession provides 'some evidence' of guilt only when relatively few inmates have access to the area." *McClung I*, 90 F. App'x 446 (*citing Broussard*, 253 F.3d at 877; *Hamilton*, 976 F.2d at 345–46). According to Delgado, scores of inmates had ready access to the area where the cell phone and MP3 player were found in his cubicle. Given these circumstances and the Fourth Circuit's decisions in *McClung I* and *McClung II*, Delgado has stated a plausible claim for the denial of due process.

---

[4] Delgado further avers, "I told the DHO I had been away from the cubicle prior to the search and had no idea who might have placed the items in or near my cubicle." (§ 2241 Pet. 8 (spacing corrected).)

Accordingly, Respondent's Motion to Dismiss will be DENIED. Any party wishing to file further dispositive motions must do so within sixty (60) days of the date of entry hereof.

An appropriate Order shall accompany this Memorandum Opinion.

Date: 12/22/11
Richmond, Virginia

/s/ 
John A. Gibney, Jr.
United States District Judge